REGAN, Judge. ;
Plaintiffs, Louis Goins and Hardie Robinson, asserting that they are shareholders, instituted this suit endeavoring to obtain a writ of mandamus directed to the defeiid1-ant, Longshoremen’s Home Association, compelling it to permit plaintiffs to examine the books .thereof.
Defendant pleaded the exceptions of ,nO' right or cause of action which were apparently overruled, and then answered 'denying that the plaintiffs were shareholders therein and, therefore, had no right to-examine the books of the corporation..
From a judgment in favor’of defendant-dismissing plaintiffs’ suit, they have proseL cuted this appeal. ■'
The record reveals that the defendant, Longshoremen’s Home Association, is a non-profit, non-trading corporation, organized in conformity with the intent of Act 254 of 1914, as amended by Act 190 of 1924- and Act 146 of 1936, LSA-R/S. 12:101 note.. It was created by act before E. A. Parsons, Notary Public, on January 14, 1939, for fraternal and eleemosynary purposes and' the acquisition of a fraternal home. • Its. domicile now exists in 2059 Jackson Avenue of this City. The charter relates that all powers of this corporation shall be vested' in and exercised by a Board of Directors, a majority of whom shall constitute a quorum for the transaction of any business. The authorized capital stock thereof is sixty shares without nominal or par value and the corporation is authorized' to issue and sell its shares for such consideration as may be fixed by the Board of Directors. No stock certificates were to be issued to any person *343 until the shares subscribed for were paid in full. The charter further authorized its president, J. B. Spencer, to purchase for and on behalf of and in the name of this corporation certain described real estate situated in Jackson Avenue in the City, of New Orleans, for the price of $4500.
A shareholder or voting member of a non-profit corporation has the right to examine personally, or by hi? agent or attorney, at any reasonable time, the records of the corporation. LSA-R.S. 12:116.
“A share may be represented by a stock certificate or by a membership certificate, as provided in the articles.” LSA-R.S. 12:101
A shareholder thereof is defined as a “person who is the owner of a property interest * * * whether this property interest is represented by a certificate for shares of stock or by a membership certificate.” LSA-R.S. 12:101
Plaintiffs, in endeavoring to prove their status as shareholders in the corporation, since the charter requires ownership of a full paid share of stock, insist that the price of a share of stock was $10 and that individually one was permitted to purchase as much as $60 worth or six shares. The plaintiffs offered the testimony of eight witnesses who endeavored to corroborate the foregoing assertion as a fact. They also offered in evidence two documents having the appearance of receipts, which they contend represent shares of full paid stock— one No. 1887 issued by the International Longshoremen’s Association, Local No. 231, dated “New Orleans, April 7, 1946” reads:
“Received from Bro. Hardie Robinson
“Amount earned $1.00 Bereeatage Share
“Collector Curry Cook, F. S.”
On the reverse thereof appears the following inscription:
“Paid in full This Receit covers all other Receits previous of it.
“$60.00 In shares.”
The second document, dated “New Orleans, La. 5-18-1941”, reads:
"5-11-41 Included
"$3.00
This Certifies that Louis Goins ha3 paid dues for month of -November-, 49S& ¡ Working- Card has been issued for this month. In case iard is lost, present this rpd|ipí and duplicate wilKlbe isstí&afor 50£/ Any/member / wtóJUases working cardLior-seco' uiLfime will be auto-maticallySuspended. Any one using wbmng card other than one issuéa to himself will be denied admission to any I.L.A. Local in the port.
"Local No. 231, International Longshoremen's Association
"No. 854 Received by Curry Cook,
"Organizer
"F.S."
The entries of payments appearing on the face and reverse thereof amount to the sum of $10.
Plaintiff Robinson testified that he gave $60 to Curry Cook, defendant’s financial secretary, and he was .informed by J. D. Spencer, the president, that the price of a share of stock was $10 and individually one could purchase six shares ¡or $60 worth. Of course these assertions are denied by the defendant.
On the other hand, defendant’s president and -its financial secretary deny that the ■ value of each share of stock was $10 -and assert that the value thereof was $75. Spencer testified that he was president of the Longshoremen’s1 Home Association since the date of its creation, January 14, 1939, and particularly on February 7, 1939. During the course of his interrogation he was asked to and did identify a minute book of the Longshoremen’s Home Association and Longshoremen’s Protective Union and Benevolent Association, especially page 234 thereof, reading as follows:
“At the request of twenty financial members a special meeting was called to order February 7, 1939, for the purpose of making permanent plans relative to a brother owning a share. On motion be Chester Cooper, seconded by Percy Terry, that the call be received *344 and approved, and that we proceed to the business about a member who failed to pay his full share in the Longshoremen’s Home Association. After a brief talk by Hazekiah Ducantel, on motion of Octave Lemann that a share of stock in the Longshoremen’s Home Association be seventy-five dollars, in the event he does not pay the full amount of seventy-five dollars he will not receive a certificate of stock and the amount paid by any member that doesn’t cover the stock will be considered as a donation to the association as incidental expenses such as light, gas and water. No one who is-not a member of the Long-shoremens Protective Union and Benevolent Association can buy a stock in the Longshoremens Plome Association. * * * ”. (Italics ours).
Spencer stated that the foregoing motion was the official action of the association fixing the value of the stock at $75 and it has never sold for less than that sum; that membership was required in the Longshoremen’s Protective Union and Benevolent Association as a condition precedent to membership in the Longshoremen’s Home Association.
Obviously the only question which the pleadings and the evidence has posed for our consideration is one of fact, and that is, whether the plaintiffs are shareholders in the defendant corporation ?
The trial judge was convinced, as his written reasons for judgment reveal that the plaintiffs were not shareholders in the defendant corporation and our examination of the record, especially the charter of the corporation fortifies our conviction that the trial judge’s findings of fact were correct. The charter of the corporation, dated January 14, 1939, provides for the issuance of sixty shares of no par value stock and it also contained a provision authorizing the President of the corporation to purchase a designated piece of improved property in Jackson Avenue to be used as a fraternal home for the association for $4,500. Therefore the number of shares multiplied by $75, the amount claimed by the defendant as the value of each share of stock, reveals the total figure of $4,500, the price of the property purchased by the association as their home. The minutes of the joint meeting of the defendant corporation and the Longshoremen’s Protective Union and Benevolent Association, which occurred on February 7, 1939, likewise reflects that the price of a share of stock was fixed at $75.
In our opinion the documents referred to hereinabove, which plaintiffs offered in evidence, may have been intended to reveal payments made on account of the purchase of stock in the defendant corporation, but they certainly did not show that plaintiffs were either shareholders or members in good standing of the Longshoremen’s Home Association.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.